HENRY C. LAWLER

*vs.*

HARTFORD FIRE INSURANCE CO.

---

HENRY C. LAWLER

*vs.*

IMPERIAL INSURANCE CO.

---

HENRY C. LAWLER

*vs.*

THE FRANKLIN NATIONAL INSURANCE CO. OF
NEW YORK, N. Y.

---

HENRY C. LAWLER

*vs.*

THE LIVERPOOL AND LONDON AND
GLOBE INSURANCE CO., LIMITED

---

HENRY C. LAWLER

*vs.*

THE PENNSYLVANIA FIRE INS. CO.

---

HENRY C. LAWLER

*vs.*

NEW HAMPSHIRE FIRE INSURANCE CO. OF
MANCHESTER, N. H.

---

HENRY C. LAWLER

*vs.*

UNION ASSURANCE SOCIETY LIMITED

---

HENRY C. LAWLER

*vs.*

SCOTTISH UNION AND NATIONAL INSURANCE COMPANY

HENRY C. LAWLER

*vs.*

MARYLAND INSURANCE COMPANY

HENRY C. LAWLER

*vs.*

CITY OF NEW YORK INSURANCE COMPANY

HENRY C. LAWLER

*vs.*

FIREMAN'S FUND INSURANCE CO.

Waldo. Opinion, August 28, 1947.

*Clyde R. Chapman,*
*McLean, Southard & Hunt,* for plaintiff.

*Perkins, Weeks & Hutchins,*
*Hillard H. Buzzell,* for defendants.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ., MANSER, A. R. J.

THAXTER, J. These eleven actions tried together before a jury are, after verdicts for the plaintiff totalling $55,-597.37, before this court on general motions by the defendants for new trials. They were brought to recover amounts claimed to be due on certain policies of fire insurance.

The plaintiff, Henry C. Lawler, was the owner of a potato storage house situated at Jackson, Maine. It burned February 12, 1944 with its contents of potatoes which were a total loss. The Hartford Fire Insurance Co. carried the insurance on the contents in the amount of $48,000. Insurance on the building in the sum of $10,000 was carried in varying amounts by the defendants in the other suits. The plaintiff filed a proof of loss against each company for the face of the policy or policies issued by each and claimed that his actual loss was in excess of the total amount represented by the policies. The parties, not agreeing as to the amount of the losses on the building and on the contents, the question was, in accordance with the provisions of the Maine Standard Fire Insurance Policy, submitted to referees, Joseph Bryant, Stillman E. Woodman, and Oscar H. Dunbar. A majority of the referees, Messrs. Woodman and Dunbar, found for the plaintiff in the following amounts, not considering some adjustments not in dispute: against the Hartford Fire Insurance Co. for the loss on the contents $26,625; against the other companies for the loss on the building $6,500. Mr. Bryant refused to sign the award,

claiming that the majority members of the board had not given due consideration to the evidence submitted, and that the amounts allowed were inadequate. The plaintiff refused to accept the award and brought suit, alleging in each case that the award was not binding on the plaintiff because the majority members "were not disinterested and impartial arbitrators such as the law requires, but were in fact biased in favor of the defendant; . . . that the said award was grossly inadequate and unfair and against the evidence and the weight of the evidence. . . ." It was necessary for the plaintiff to prove such partiality and bias in order that the issue as to the amount of the loss could properly be submitted to a jury. *Young* v. *Aetna Insurance Co.,* 101 Me. 294. That issue of bias in accordance with the agreement of the parties was submitted to the jury in the form of a special verdict and they found for the plaintiff; and they then determined the loss as $42,910 on the contents of the building which with interest came to a total of $48,094.96. They found the loss on the storehouse as $8,542, from which amount by agreement certain payments made on a mortgage were deducted, and the balance with interest amounted to $7,502.41 which was apportioned against the other companies.

Conceding for the moment that the jury's finding on the special verdict can be sustained, there is evidence to sustain their verdicts as to the amount of the loss on both the storehouse and on the contents. The sole question before this court accordingly is, was there evidence to sustain their finding that the referees were not impartial and disinterested. If their decision on this point was warranted, these motions must be overruled.

The contract of insurance in the form required by statute, R. S. 1944, Chap. 56, Sec. 97, provides that if the parties to the contract are unable to agree on the amount of a loss, it shall be determined by "three disinterested men" selected in accordance with the provisions of the statute. As is pointed out in *Young* v. *Aetna Insurance Co., supra,* the statutory

method of selection of referees takes from the parties the freedom of choice which they would have in an ordinary reference in choosing those who are to sit in determining a very vital question. The plaintiff was forced to agree to such provision of the contract or go without insurance. It is evident from the *Young* case that the court should, because of such compulsion against the assured, be meticulous in its examination of the facts to determine that the statutory requirement that the referees should be disinterested has been fulfilled. Both the language of the court and the decision in that case so indicate. "From the foregoing considerations and others," says the opinion at page 298, "we are satisfied that the insurance statute and the insurance contract require that the referee shall be 'disinterested' not only in the narrow sense of being without relationship and pecuniary interest, but also in the broad, full sense of being competent, impartial, fair and open minded, substantially indifferent in thought and feeling between the parties, and without bias or partisanship either way." And the court found bias, prejudice, and want of open-mindedness on the part of one of the referees because of his refusal to consider a local man for the third member of the board. Such refusal was held to be unreasonable and to be evidence of partiality.

The two referees, against whom the plaintiff in the instant case complains, are men of the highest character. Not even the plaintiff questions that. Men of high character, however, may still have their prejudices which unconsciously influence their actions. We think that there was evidence to support the jury's finding that these referees were not open-minded. There is something to be said for the contention of plaintiff's counsel that Mr. Woodman was over insistent on the selection of a third referee of someone very friendly to himself like Mr. Dunbar, and that he refused even to consider other names suggested by Mr. Bryant.

We feel that there is evidence to support the jury's finding in the fact that Mr. Woodman supported by Mr. Dun-

bar refused to give due consideration to the testimony of many witnesses as to the quantity of potatoes in the building before the fire. It is apparent that much of that testimony was practically ignored because of Mr. Woodman's opinion that the quantity of potatoes there after the fire did not indicate that the amount claimed by the plaintiff could have been there before the fire. And there was almost no evidence to support that assumption. Evidence as to facts was ignored for a conjecture. There was evidence from a number of witnesses that the potato house was full or nearly full before the fire. One of these witnesses was called by the defendant. A glance at some of Mr. Woodman's testimony will, we think, indicate that he refused to consider important testimony as to the quantity of potatoes there before the fire because he could not find them in the ruins after the fire.

"Q. Now, Mr. Benjamin Morrison also testified that all available space was taken. Did you give any weight to that testimony?

A. Oh, yes.

Q. That is the same house.

A. But the same answer, Mr. McLean. I still wanted to find the potatoes. That is where my award was based.

Q. Harry M. Bates testified that all the available space was used?

A. Yes.

Q. Did you give any weight to that testimony?

A. Yes. He also testified here the other day —

Q. Well, never mind the other day. I want to know what weight you gave to that testimony.

A. Some. I still wanted to find the potatoes.

Q. Fernald E. Parlin testified that all available space was taken. What weight did you give to his testimony?

A. Some, but I wanted to find the potatoes.

Q. Percy C. Humphrey testified that all available space was taken. What weight did you give to his testimony?

A. I wanted to find the potatoes. I gave it some consideration."

Dana Small testified that all available space in the building was occupied before the fire. Mr. Woodman was asked what weight he gave this testimony and replied: "Not so much as I did to the fact that we could not find the potatoes, Mr. McLean." Then we find this comment on the testimony of Charles Roberts, a witness called by the defense:

"Q. Now, you know that Charles Roberts testified as a witness for the insurance companies, didn't you?

A. Yes.

Q. He testified that all bins were full except one to the east which started to crowd. Do you remember his saying that?

A. I have a faint recollection. You have got it down there.

Q. Now he was the insurance companies' witness, wasn't he?

A. I think he was.

Q. Now, the insurance companies' witness and Mr. Lawler's witnesses are agreed, then, that all those bins were full except the east one which had started to crowd?

A. Yes.

Q. Now, did you still discredit the testimony as to the number of potatoes when the witnesses on both sides agreed?

A. Yes, Mr. McLean; we couldn't find the potatoes and we had no evidence that they would shrink up that much."

Bias is a state of mind; and we think that the jury were warranted in finding that Mr. Woodman from his own deductions based on the quantity of potatoes which he saw after the fire was so convinced that the plaintiff's claim

was unfounded that he refused to consider important evidence bearing on the question of the quantity on hand before the fire.

Without in any way questioning the honesty of purpose of these referees, we think that there was evidence to support the jury in their finding that a majority of the board did not approach the solution of this problem with that open-mindedness to which the parties here involved were entitled.

The entry must accordingly be in each case:

*Motion overruled.*